Filed 6/22/16  Public Guardian of Sonoma County v. E.H. CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PUBLIC GUARDIAN OF SONOMA COUNTY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>E.H.,<br><br>        Defendant and Appellant. | A145979<br><br>(Sonoma County<br>Super. Ct. No. SPR82694) |

E.H. is charged with first degree murder in the April 2007 death of his mother. Reportedly, he stabbed her with a sword 16 times after his persistent Star Wars delusions convinced him that she had been taken over by the "dark side."  After being found incompetent to stand trial pursuant to section 1370 of the Penal Code, E.H. was committed to Napa State Hospital in September 2007.  As he was not restored to competency after a period of three years, the Sonoma County Public Conservator (Public Conservator) petitioned the court in June 2010 to establish a so-called "Murphy conservatorship" for E.H. under the Lanterman-Petris Short Act (LPS Act), Welf. & Inst. Code, § 5000 et seq.[1]  This renewable one-year conservatorship was most recently

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.  These preliminary facts are taken from our prior unpublished opinion in this matter—*Public Guardian of Sonoma County v. E.H.* (April 14, 2015, A143271) [nonpub. opn.] (*E.H.*)—a court record of which we take judicial notice.  (Evid. Code, §§ 452, subds. (c) & (d), 459, subd. (a).)

1

extended by the trial court on August 4, 2015, to cover the period from July 26, 2015, through July 26, 2016.

E.H. appealed from this latest renewal, and his appellate attorney has filed a brief raising no specific issues but asking us to conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). Although appellate counsel acknowledges that, in *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 (*Ben C.*), the California Supreme Court declined to extend *Wende/Anders* procedures to "typical" LPS Act appeals, he argues that a different result is required for appeals involving Murphy conservatorships due to their entanglement with an underlying criminal matter and their less extensive procedural protections. Appellate counsel made an identical argument last year in connection with the appeal from the previous extension of E.H.'s Murphy conservatorship. (*E.H.*, *supra*, A143271 at p. 2.) In that prior case, after reviewing the matter, we expressed doubt that an appeal involving a Murphy conservatorship is distinguishable in any meaningful way from existing precedent which refused to mandate *Wende* review in similar contexts. (*Id.* at pp. 6-7.) Nevertheless, since the record was short and E.H. had been committed for a significant period of time without any appellate review of his circumstances, we exercised our discretion to retain the appeal and conduct a full record review. (*Id.* at p. 8.) We elect to follow a similar procedure here, both because the record is short and because we are now very familiar with E.H.'s case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A summary of E.H.'s prior conservatorship proceedings can be found in our previous opinion, *Public Guardian of Sonoma County v. E.H.* (April 14, 2015, A143271) [nonpub. opn.].

In June 2015, the Public Conservator petitioned the trial court for reappointment as E.H.'s Murphy conservator for an additional year. The petition was supported by the medical opinion of two physicians who opined that E.H. continued to be gravely disabled as defined by subdivision (h)(1)(B) of section 5008, such that a Murphy conservatorship

2

remained appropriate.[2] (See § 5361.) In an accompanying declaration, E.H.'s treating physician indicated that E.H. continued to have deeply entrenched delusions and was thus unable to assist counsel.

At the hearing on August 4, 2015, the parties stipulated that E.H. had a current indictment pending, charging a serious felony. E.H.'s attending psychiatrist, Dr. Brar, was then qualified as an expert in psychiatry and testified regarding E.H.'s mental condition. With respect to competency, Dr. Brar stated: "[E.H.] lacks a clear, rational understanding of the events that took place. His understanding is clouded by deep-seated, grandiose, bizarre and persecutory delusions. As a result of that, he would not be capable of assisting his Counsel in entering a rational defense in this case." During the past year, E.H. continued "to voice and express deep-seated delusions surrounding bizarre thoughts of his involvement with Jedi powers, ability to read minds. Other delusions include persecutory delusions, which can have a bizarre element in regards to being pursued by " 'grey aliens.' " In addition, E.H. viewed the recent removal of the vending machines from his unit as a CIA conspiracy against him and the other patients.

E.H. had shown no significant improvement while under Dr. Brar's care, despite the use of anti-psychotic medication. In Dr. Brar's opinion, if E.H. was placed in a less structured unit, he would likely not take his medications and decompensate. Dr. Brar further testified that, if E.H. was not conserved and confined, he would pose an imminent

---

[2] A person is gravely disabled for purposes of that statute if he or she has been found mentally incompetent under section 1370 of the Penal Code and all of the following are true: (1) the indictment or information pending against the person at the time of commitment charges a "felony involving death, great bodily harm, or a serious threat to the physical well-being of another person;" (2) the indictment or information has not been dismissed; and (3) "[a]s a result of a mental health disorder, the person is unable to understand the nature and purpose of the proceedings taken against him or her and to assist counsel in the conduct of his or her defense in a rational manner." To these statutory requirements, the California Supreme Court has added and additional, constitutionally required finding: that the conservatee is " 'currently dangerous as the result of a mental disease, defect, or disorder.' " (*County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 442-443, quoting *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 178.)

risk of serious harm to others. Specifically, given E.H.'s significant persecutory delusions, he could be unsafe because he perceives various aliens trying to harm him: "If he were to perceive another individual or individuals in a setting, based on his delusions, that was unsafe to him, it's possible it could result in a dangerous situation." The allegations with respect to E.H. in the pending indictment were a significant factor to Dr. Brar in reaching his opinion with respect to current dangerousness. E.H. would need to resolve his delusional thinking before Dr. Brar would see a decrease in risk.

E.H. also testified. He disagreed with Dr. Brar's characterization of the "greys" as aliens, because they are actually white humans. They come from places like England and other higher latitude places where it snows. Snow can send "greys" into the sky and, at higher latitudes, they tend to be stretched out across time. According to E.H., the "greys" are "basically just like us," and they come to the navy to design ships for their women. When E.H. meditates—which is not so much meditation as it is just standing—the "greys" dive on him and attach themselves to his feet and toes. This apparently happened back in 2006 and 2007.

At the time of the hearing, E.H. was concerned because the vending machine had been removed from his unit and, without food supplementing, he was unable to protect himself. As he put it: "I need to maintain food in me to maintain the logic attached to my toes to protect me." If his food needs were not met, E.H. was concerned that the "greys" in the sky would invade "our prophecy" and try to make people "ore." E.H., himself, would become "ore," have severe internal bleeding, and die. E.H. further disclosed that his teeth were "actually heavily possessed," a situation that was difficult for him to fight while on medication. E.H. recognized that he would sound delusional if he said he was a movie hero, so determined not to speak about that. However, he indicated that it was "real important" he survive. He further stated that he should be let go, but not let out of this country, "or this planet will be in big trouble." Finally, E.H. testified that his case had never been properly investigated, including the fact that his mother was not actually related to him, that he had made a " 'vader' " mask, and that he had gotten a disintegrator and "had to turn people into a pile of ash."

4

At the conclusion of the hearing, the trial court granted the Public Conservator's petition to extend E.H.'s Murphy conservatorship. This timely appeal followed.

## II. DISCUSSION

Having performed the discretionary review requested by appellate counsel, we find no issues that require further briefing.[3] A court order continuing a conservatorship pursuant to section 5631 is reviewed on appeal for substantial evidence. (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577; *Conservatorship of Murphy* (1982) 134 Cal.App.3d 15, 18.) As recited above, there was substantial evidence to support the trial court's order extending E.H.'s Murphy conservatorship. Indeed, the evidence that he continues to fall within the statutory criteria was overwhelming. Moreover, E.H. was ably represented by counsel, both in the trial court and on appeal. We see no error.

## III. DISPOSITION

The judgment is affirmed.

---

[3] E.H. was informed of his right to file a supplemental brief with this court in order to bring to our attention any issues he believes deserve review. He has not done so.

_____
Reardon, J.

We concur:

_____
Ruvolo, P.J.


_____
Streeter, J.

A145979 _E.H._

6